UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY CHAVEZ, JR.,<br><br>        Petitioner,<br><br>    v.<br><br>CALIFORNIA CORRECTIONAL INSTITUTION PRISON WARDEN,<br><br>        Respondent. | Case No.: 1:13-cv-00181-AWI-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

In 2010, Petitioner was convicted of voluntary manslaughter, conspiracy, and participation in a criminal street gang, along with various enhancements. In this petition, he does not challenge either his conviction or subsequent sentence; rather, he contends that his gang "validation," which Respondent contends excludes Petitioner from earning prison credits, violates the federal guarantee against ex post facto laws, and was in violation of the plea agreement. Because the Court does not find the arguments to be well-taken, it recommends the petition be **DENIED**.

I.  **Background**

Petitioner was validated as a member of the Northern Structure ("NS") prison gang on May 31, 2002 while serving a prison term for a prior conviction. (Doc. 9, Ex. B, pp. 17; 28; Doc. 1, pp. 26; 37). While on parole from the earlier conviction, Petitioner was returned to custody based upon the current offenses, to which Petitioner pleaded nolo contendere and, on March 11, 2011, was sentenced to a

prison term of 26 years, eight months. (Doc. 9, Ex. 3, p. 8). Petitioner was transferred to Respondent's custody on March 23, 2011, and immediately placed in administrative segregation based upon his prior gang affiliations. (Doc. 9, Ex. 3, p. 10). Thereafter followed a lengthy review of Petitioner's ties to NS, on July 11, 2011, Petitioner was validated as a member of the Northern Structure prison gang. (Doc. 1, pp. 26; 28). Based upon this validation, on September 29, 2011, Petitioner was given an indeterminate term in the Secure Housing Unit. (Id.).

## II. Discussion

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. Petitioner's conviction arises out of the Santa Clara County Superior Court, which is not located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d). However, Petitioner does not challenge that conviction; rather, he challenges the manner in which his sentence is being executed, i.e., through denial of prison good-time credits because he has been "validated" as an active gang member. Since Petitioner was incarcerated at the California Correctional Institution, Tehachapi, California, at the time the petition was filed, and since that facility lies within the jurisdiction of this Court, the Court has jurisdiction to proceed.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the

petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

### B.     Review of Petitioner's Claim

Petitioner alleges a single ground for relief: that application of California Penal Code § 2933.6(a) to deny Petitioner prison credits because his gang validation violates the ex post facto clause of the U.S. Constitution and also violates his plea agreement, which, Petitioner maintains, included an understanding that he would earn fifteen percent credits.

#### A. Violation of Federal Ex Post Facto Clause And Breach Of Plea Agreement

Petitioner contends that his gang validation prevents him from earning good time credits pursuant to Pen. Code sec. 2933.6(a), which, Petitioner argues, violates the prohibition against ex post facto laws. This contention is without merit.

##### 1. The Superior Court Opinion.

The Superior Court rejected Petitioner's arguments as follows:

> Petitioner contends a gang validation in 2002 prevents him from earning credit pursuant to P.C. Section 2933.6(a). He argues that this statute violates the prohibition against ex post facto laws. The Department of Corrections and Rehabilitation disagrees contending that his incarceration is on a gang parole violation stemming from the present offense on March 23, 2011, and the classification committee report confined him to administrative segregation due to the gang validation.
>
> P.C. Section 2933.6(a) provides that inmates who misbehave due to disciplinary violations, placement in psychiatric housing or validated as a gang member or associate are precluded from receiving conduct credits for the duration of their confinement.
>
> In In re Sampson (2011) 197 Cal.App.4th 1234, 1238, (citing Lynce v. Mathis (1997) 519 U.S. 433, 435, 449, the court held that this statute does not violate the prohibition against ex post facto laws because it is not punitive and is designed to curtail gang activity within prison walls. This statute creates a disincentive for belonging to a gang or misconduct within prison walls. Petitioner can either debrief or become an inactive gang member. 15 Cal. Code Regs. Section

3378.1, 15 Cal. Code Regs Section 3378(e).  The Department of Corrections and Rehabilitation applies this statute prospectively stemming from his recent confinement.  <u>Sampson</u> at 1238.

(Doc. 9, Ex. 3, p. 13).

### 2. Federal Standard.

"The States are prohibited from enacting an ex post facto law."  <u>Garner v. Jones</u>, 529 U.S. 244, 249 (2000)(citing U.S. Const., art. I, § 10, cl. 1).  "One function of the Ex Post Facto Clause is to bar enactments which, <u>by retroactive operation</u>, increase the punishment for a crime after its commission."  <u>Id</u>. (emphasis added).  Although retroactive changes in laws governing parole of inmates may violate the Ex Post Facto Clause, "not every retroactive procedural change creating a risk of affecting an inmate's terms or conditions of confinement is prohibited."  <u>Id</u>. at 250.  A retroactive procedural change violates the Ex Post Facto Clause when it "creates a significant risk of prolonging [an inmate's] incarceration."  <u>Id</u>. at 251.  A "speculative" or "attenuated" risk of prolonging incarceration is insufficient to establish a violation of the Ex Post Facto Clause.  <u>Cal. Dept. Of Corr. V. Morales</u>, 514 U.S. 499, 509 (1995).

To establish an Ex Post Facto Clause violation, (1) an inmate must show that the challenged statute, on its face, creates a significant risk of increasing the inmate's punishment, or (2) the inmate must "demonstrate, by evidence drawn from the rule's practical implementation ...that its retroactive application will result in a longer period of incarceration than under the earlier rule."  <u>Garner</u>, 529 U.S. at 255.  As the Supreme Court has indicated, "the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage'…but on whether any such change increases the penalty by which a crime is punishable."  <u>California Dept. of Corrections v. Morales</u>, 514 U.S. 499, at 506-507, n. 3, 115 S.Ct. 1597 (1995).

### 3. Analysis.

#### a. Ex Post Facto Argument.

Petitioner contends that the January 25, 2010 amendment to California Penal Code section 2933.6, which denies credits to inmates who are validated prison-gang associates and who are housed in the security housing unit, violates the Ex Post Facto Clause because it changes the consequences of his 2002 gang validation to his disadvantage and makes the punishment for his commitment offense

more onerous.

Notably, on January 25, 2010, California Penal Code section 2933.6(a), regarding sentence reduction conduct credits, was amended to read: "(a) Notwithstanding any other law, a person who is placed in a Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or an Administrative Segregation Unit for misconduct described in subdivision (b) or upon validation as a prison gang member or associate is ineligible to earn [sentence reduction conduct] credits pursuant to Section 2933 or 2933.05 during the time he or she is in the Security Housing Unit, Psychiatric Services Unit, Behavioral Management Unit, or the Administrative Segregation Unit for that misconduct."

In order for a law to be ex post facto, it must be both disadvantageous to the offender and retrospective. Weaver v. Graham, 450 U.S. 24, 29 (1981). To determine if a law is retrospective, "[t]he critical question is whether the law changes the legal consequences of acts completed before its effective date." Id. at 31.  In Weaver, the Court noted "the ex post facto prohibition ... forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." 450 U.S. at 30. At the time Weaver was convicted of his commitment offense, he was eligible for a specific number of gain-time credits awarded for good conduct. However, two years into his prison sentence, Florida reduced the number of gain-time credits Weaver could accrue. As a result, the Court determined Weaver was "disadvantaged by the reduced opportunity to shorten his time in prison simply through good conduct." Id. at 33–34. The amendment reduced Weaver's credits through no fault of his own. The only conduct triggering the application of the gain-time statute to Weaver was his commission of the commitment offense-which took place two years before the amendment. Thus, the new law effectively lengthened inmate Weaver's prison term.

 In Lynce, the Supreme Court applied the two-part test set forth in Weaver to determine if a Florida law which revoked overcrowding credits that had already been awarded was ex post facto. Lynce v. Mathis, 519 U.S. 433, 441 (1997). The Court held the new law "retroactively cancelled all provisional credits awarded to inmates convicted of murder or attempted murder." Id. at 436. The law clearly disadvantaged inmate Lynce because it "had the effect of lengthening [Lynce's] period of incarceration." Id. at 443. As in Weaver, the only conduct triggering the new application of the law was the commission of the crime years earlier.

In this instance, unlike the amendments in <u>Weaver</u> and <u>Lynce</u>, Section 2933.6 is not ex post facto because it is not retrospective, i.e. it does not punish inmates for conduct that was completed before the effective date of the amendment, i.e., January 25, 2010.  Cal.Penal Code § 2933.6(a). 2933.6; <u>Kansas v. Hendricks</u>, 521 U.S. 346, 370–371 (1997) (holding Kansas' Sexually Violent Predator Act is not an ex post facto law because, among other reasons, it is not retrospective since it permits involuntary confinement based on a determination of current mental disorder "and does not criminalize conduct legal before its enactment, nor deprive [petitioner] of any defense that was available to him at the time of his crimes.")  Instead, the amendment to the law applies to Petitioner because of his continued association with the Northern Structure prison gang *after* January 25, 2010.  Cal.Penal Code § 2933.6(a).  If Petitioner had not been an active associate of the gang after January 25, 2010, the law as amended would not apply to him. <u>Id</u>. In other words, the conduct being punished, i.e., active association with a prison gang is <u>continuing</u> in nature and has continued after January 25, 2010.  <u>See e.g. Madrid v. Gomez</u>, 889 F.Supp. 1146, 1270–1279 (N.D.Cal.1995) (upholding the gang validation process and the accompanying periodic reviews to ensure inmates are properly placed in the security housing unit based on their continuing gang affiliation); Cal.Code Regs. tit. 15, § 3378(c)(1) (defining current prison gang activity "as any documented gang activity within the past six (6) years.")

Moreover, Petitioner has not been deprived of any previously earned credits, and, most significantly, Petitioner can drop out of his prison gang and restore his credit-earning eligibility at any time by completing the debriefing process. Cal.Penal Code § 2933.6(a); Cal.Code Regs. tit. 15, § 3378.1.  Petitioner continues to refuse to end his gang association by debriefing.  (Ex. 1 at 16, 19, 27.)  Thus, the state court determinations finding Penal Code § 2933.6(a) do not violate the ex post facto principles were not contrary to or an unreasonable application of existing Supreme Court precedent.  Likewise, Petitioner has not set forth clear and convincing evidence that the state courts made any unreasonable determinations of the facts.

Finally, the state court, which relied upon <u>In re Sampson</u>, 197 Cal.App.4th 1234 (2011), to reject Petitioner's argument, did not unreasonably apply clearly established federal law. In <u>Sampson</u>, the state appellate court was "not convinced that it [§ 2933.6] punishes the criminal conduct for which petitioner was imprisoned, or that it punishes misconduct that occurred prior to January 25, 2010 [, the

7

effective date of the amended 2933.6]":

> [I]f the credit eliminating amendment to section 2933.6 constitutes punishment, ex post facto principles do not bar its application to petitioner here, because it does not impose punishment for the offense that gave rise to petitioner's prison sentence. Rather, if it punishes, it punishes for conduct that occurred after the commission of, or the conviction for, the punishable offense. In other words, petitioner's ineligibility for conduct credit accrual is not punishment for the offense of which he was convicted. Nor is it punishment for gang-related conduct that occurred prior to January 25, 2010, since petitioner was not stripped of conduct credits he had already accrued. It is punishment for gang-related conduct that continued after January 25, 2010.

197 Cal.App.4th at 1242, 130 Cal.Rptr.3d 39. The state court rejected the lower's court's concern that the lengthy gang-debriefing process could deprive a prisoner who is no longer committing gang-affiliated misconduct. Such possibility was speculative and there was no evidence that if the petitioner completed debriefing, he would be denied all the credits he otherwise would have earned after January 25, 2010. Id. at 1243-44, 130 Cal.Rptr.3d 39.

Furthermore, any claim that Petitioner has a liberty interest in credit earning is also without merit. A liberty interest may originate from the Due Process Clause or by state action. Hewitt v. Helms, 459 U.S. 460, 461, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); Wolff v. McDonnell, 418 U.S. 559 (1974). The Constitution ensures that a protected liberty interest is free from "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483–484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Under California law, "[c]redit is a privilege, not a right." Cal.Penal Code § 2933(c). Accordingly, Petitioner does not have a federal right to earn prison credits. Kalka v. Vasquez, 867 F.2d 546, 547 (1989). Furthermore, as previously stated, Petitioner was not deprived of earned credits; rather, only his eligibility or capacity to earn credit in light of his gang activity was modified by § 2933.6. Thus, there is no basis to a due process challenge based on the lack of credit earning because of the gang affiliation.

From the foregoing, it is clear that the state court, applying federal ex post facto principles, reasonably applied those principles to the facts in this case to conclude that the credit-depriving provisions of § 2933.6 are not retroactively applied and thus do not fall within the ambit of the federal

ex post facto rule. Accordingly, the state court adjudication was not objectively unreasonable.[1] See, e.g., Aguilar v. Gonzalez, 2013 WL 4049060 (E.D. Cal. Aug. 7, 2013), *3 (no ex post facto violation for gang validation pursuant to § 2933.6(a)); Mares v. Stainer, 2012 WL 345923 (E.D. Cal. Feb. 1, 2012), *2-3 (same); Loredo v. Gipson, 2013 WL 1281570 (E.D. Cal. Mar. 25, 2013) *3 (same); Saavedra v. Cate, 2012 WL 1978846 (E.D. Cal. June 1, 2012) *3 (same); Miranowski v. Stainer, 2013 WL 2256519 (E.D. Cal. May 22, 2013) *5-6 (same).

### b. Breach of Plea Agreement.

Petitioner also claims that the denial of the right to earn good conduct credits post-January 25, 2010, breaches the plea agreement he entered into with respect to his underlying conviction. Petitioner claims he pleaded nolo contendere and agreed to a term of 26 years, 8 months. (Doc. 1, p. 9). He further claims he was guaranteed a 15% credit reduction for his plea. Id.

A criminal defendant has a due process right to enforce the terms of a plea agreement. Doe v. Harris, 640 F.3d 972, 975 (9th Cir.2011) (citing Santobello v. New York, 404 U.S. 257, 261, 92 S.Ct. 495 (1971). Plea agreements are contractual in nature and are to be construed under ordinary contractual interpretation of state law. Doe, 640 F.3d at 975; Buckley v. Terhune, 441 F.3d 688, 695 (9th Cir.2006) (en banc). Under California law, the court construes the plain language of the contract and considers the objectively reasonable expectations of the promise. Buckley, 441 F.3d at 695.

Assuming Petitioner's contention to be true, the plea agreement was not breached for the simple reason that Petitioner's status post-January 25, 2010, was a result of his own behavior in continuing to be an active prison gang member. Contrary to Petitioner's implicit assumption, active membership in a prison gang is indeed an act of misconduct. "Gangs, as defined in [California Code of Regulations, title 15] section 3000, present a serious threat to the safety and security of California prisons," and "[i]nmates and parolees shall not knowingly promote, further or assist any gang as defined in section 3000." In re Furnace, 185 Cal.App.4th 649, 657, 110 Cal.Rptr.3d 820 (2010). Pursuant to Cal.Code of

---

[1] Respondent contends as well that because there is no "clearly established" federal law as to whether a change in an inmate's credit-earning eligibility because of the inmate's ongoing misconduct violates the ex post facto clause, Petitioner is not entitled to habeas relief. (Doc. 9, p. 8). While this assertion may be technically correct, it misses the larger point that in both the state and federal cases cited above, the courts concluded that changes in credit-earning based on ongoing activity did not fall within the ambit of the ex post facto clause. Thus, in the Court's view, it is more accurate to say that the ex post facto clause does not apply to Petitioner's situation rather than merely that no clearly established federal law exists regarding the applicability of the ex post facto clause to Petitioner's situation.

Regs, title 15, section 3000, California courts have determined that validation as an active member of a prison gang constitutes an act of misconduct.  <u>See In re Sampson</u>, 197 Cal.App.4th at 1242.  In addition, as mentioned previously, Petitioner can drop out of his prison gang and restore his credit eligibility at any time by completing the debriefing process.  Cal.Penal Code § 2933.6(a); Cal.Code Regs. tit. 15, § 3378.1.  Accordingly, it is Petitioner's <u>own ongoing misconduct</u> which has resulted in his indeterminate placement in the SHU and the resulting reduction of his credit earning status.  Therefore, Petitioner's fails to demonstrate a due process violation on the claim that his plea agreement was breached.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 24, 2015**                               /s/ Jennifer L. Thurston
                                                                                UNITED STATES MAGISTRATE JUDGE